**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **SAM GRANT, individually and on behalf of all others similarly situated,** | No. _____ |
| **Plaintiff,** | |
| **v.** | |
| **COSTCO WHOLESALE CORPORATION,** | |
| **Defendant.** | |

## NOTICE OF REMOVAL

**PLEASE TAKE NOTICE** that under 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Defendant Costco Wholesale Corporation ("Costco") hereby removes this action from the Circuit Court of Cook County, Illinois, to the United States District Court for the Northern District of Illinois. Costco reserves all rights and defenses available to it and, in support of this Notice, states as follows:

## INTRODUCTION

1.  On July 20, 2022, Plaintiff Sam Grant filed a Class Action Complaint ("Compl.") against Costco in the Circuit Court of Cook County, Illinois, Chancery Division, Case No. 2022CH06947, captioned, "SAM GRANT, individually and on behalf of all others similarly situated, *Plaintiff*, v. COSTCO WHOLESALE CORPORATION, *Defendant*" (the "State Court Lawsuit").

2.  On August 2, 2022, Mr. Grant served Costco with the Summons, Class Action Complaint, and Motion for Class Certification and Memorandum in Support. True and correct copies of the Summons, Class Action Complaint, and Motion for Class Certification and Memorandum in Support are attached as **Exhibit A**.

3.     A plaintiff may not avoid federal jurisdiction by "artfully pleading" a state claim for what is essentially a federal claim. *Ready Transp., Inc. v. Best Foam Fabrications, Inc.*, 919 F. Supp. 310, 312 (N.D. Ill. 1996) (quotations omitted). "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant." 28 U.S.C. § 1441(a); *see, e.g.*, *Haslam v. Lefta, Inc.*, 1994 WL 117463, at *2 (N.D. Ill. Mar. 25, 1994) (court has jurisdiction based on diversity over Magnuson-Moss Warranty Act claim); *accord Allen v. Toyota Motor Sales, U.S.A., Inc.*, 155 F. App'x 480, 482 n.2 (11th Cir. 2005); *Wetzel v. Am. Motors Corp.*, 693 F. Supp. 246, 250–53 (E.D. Pa. 1988).

4.     This action is removable under Section 1441 because the district courts of the United States have original jurisdiction pursuant to (1) the Class Action Fairness Act of 2005, Pub. L. 109-2, 119 Stat 4 (2005) ("CAFA"), codified at 28 U.S.C. §§ 1332(d) & 1453, and (2) 28 U.S.C. § 1332.

## THE ACTION IS REMOVABLE UNDER CAFA

5.     CAFA was enacted based on Congress's concern that certain types of cases "have been restricted to State courts even though they have national consequences." 151 Cong. Rec. S1086-01, S1103 (Feb. 8, 2005). CAFA's purpose is to allow "[f]ederal court consideration of interstate cases of national importance." 28 U.S.C. § 1711, stat. note, subd. (b)(2). It follows that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014).

6.     CAFA provides that a defendant may remove a state court class action to federal court if: (1) the proposed class consists of 100 or more members; (2) the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs; and (3) any member of the proposed plaintiff class is a citizen of a different state than any defendant. *See* 28 U.S.C. § 1332(d)(2), (d)(5), (d)(6), and § 1453(b). This action satisfies each requirement.

### *Mr. Grant Proposes a Class of More than 100 Persons*

7.     This action is a putative class action within the meaning of CAFA, which defines "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action."  28 U.S.C. § 1332(d)(1).

8.     Mr. Grant brought this case as a putative class action and seeks to certify a class under Illinois's class action statute, 735 ILCS 5/2-801 (Compl. ¶ 37), the requirements of which are "patterned" after Federal Rule of Civil Procedure 23.  *See Smith v. Ill. Cent. R.R. Co.*, 223 Ill.2d 441, 447–48 (2006).  In other words, 735 ILCS 5/2-801 is a "similar State statute" to Federal Rule of Civil Procedure 23.

9.     Mr. Grant asserts a single cause of action under the First Cause of Action of the Complaint for violation of the federal Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*. (Compl. ¶¶ 46–53.)  Mr. Grant seeks to assert these claims on his behalf individually and on behalf of the following proposed class:  "All citizens of Illinois with active Costco memberships."  (*Id.* ¶ 37.)  The Complaint alleges the proposed class "contains thousands of individuals, at least."  (*Id.* ¶ 40.)

10.     Mr. Grant thus seeks to proceed on behalf of a proposed class well in excess of 100 persons.  *See* 28 U.S.C. § 1332(d)(5)(B).

### *The Amount in Controversy Exceeds $5 Million*

11.     For purposes of removal under CAFA, "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."  28 U.S.C. § 1332(d)(6).  This Court has jurisdiction over this matter because Mr. Grant's allegations show this is a "civil action in which the matter in controversy exceeds the sum or value of $5,000,000."  *Id.* § 1332(d)(2).

12.     Where, as here, "the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so."  *Dart Cherokee*, 574 U.S. at 84. Under 28 U.S.C. § 1446(a), "a defendant's notice of removal need include only a plausible

3

allegation that the amount in controversy exceeds the jurisdictional threshold." *Id*. at 89. "The party seeking removal does not need to establish what damages the plaintiff will recover, but only how much is in controversy between the parties." *Blomberg v. Service Corp. Int'l*, 639 F.3d 761, 763 (7th Cir. 2011).

13.     "The statute authorizing a right of action under Magnuson-Moss allows the consumer to bring suit for damages and other legal and equitable relief." *Jones v. Fleetwood Motor Homes*, 127 F. Supp. 2d 958, 967 (N.D. Ill. 2000). The Complaint is based on "products which cost more than $15 and are subject to a warranty from the Product's [sic] manufacturer" sold by Costco in Illinois. (Compl. ¶ 8.) Mr. Grant also alleges Costco "makes a significant amount of money by selling consumers 'protection plans,' or 'extended warranties' for their products." (*Id*. ¶ 29.)

14.     Mr. Grant seeks "equitable relief," which may exceed $5 million alone. (Compl. at 14.) Illinois courts recognize "refund," "recission" and "[r]evocation of acceptance" as forms of "equitable relief." *Jones*, 127 F. Supp. 2d at 967; *Mydlach v. DaimlerChrysler Corp.*, 226 Ill.2d 307, 328 (2007). More than $5 million in Costco's Illinois sales over the past four years involved sales of products with written warranties that cost more than $15. Indeed, Mr. Grant's action potentially implicates thousands of consumer products sold by Costco in its stores and website that come with written warranties and cost more than $15, e.g., televisions, other electronics, appliances. Many of the products at issue cost many hundreds or thousands of dollars each. Costco sells many thousands or more of these products in Illinois every year.

15.     Mr. Grant may also seek legal damages, which may also exceed $5 million alone based on Costco's Illinois sales over the past four years involving sales of products with written warranties that cost more than $15, to the extent the putative class claims to have been damaged by their purchases based on their purported inability to obtain written warranties prior to their purchase as Mr. Grant claims.

16.     Although Mr. Grant tried to disclaim damages for himself and the proposed class to avoid removal, "Illinois does not bind plaintiffs to such claims in complaints—like in federal

4

court, plaintiffs in Illinois are not limited to the amounts they've requested. So [Mr. Grant's] disclaimer [has] no legal effect. … If [Mr. Grant] really wanted to prevent removal, [he] should have stipulated to damages not exceeding the … jurisdictional limit." *See, e.g.*, *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006). In fact, if a plaintiff does not stipulate to damages less than the jurisdictional limit, "the inference arises that he thinks his claim may be worth more." *Workman v. United Parcel Serv., Inc.*, 234 F.3d 998, 1000 (7th Cir. 2000).

17.     In addition, "a plaintiff's stipulation on damages does not bind the class for CAFA purposes" "prior to class certification." *Peatry v. Bimbo Bakeries USA, Inc.*, 393 F. Supp. 3d 766, 770 (N.D. Ill. 2019). "That is because a plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 593 (2013). "[T]herefore, [Mr. Grant's] precertification stipulation," if he had so stipulated (he did not) cannot "overcome [a] finding that the CAFA jurisdictional threshold had been met." *Id.*

18.     Punitive damages also "factor into the amount-in-controversy calculation." *Sabrina Roppo v. Travelers Comm. Ins. Co.*, 869 F.3d 568, 582 (2017). In fact, a court may rely on even the potential for punitive damages to calculate amount in controversy even where a plaintiff "did not expressly ask for a punitive award." *Back Doctors Ltd. v. Metro. Prop. & Cas. Ins. Co.*, 637 F.3d 827, 831 (7th Cir. 2011). In certain cases, "[t]he Seventh Circuit [has] indicated punitive damages may be available under the Magnuson-Moss Act." *McNair v. McGrath Lexus-Colosimo*, 11 F. Supp. 2d 990, 993 (N.D. Ill. 1998). Such damages should at least be included in the jurisdictional amount as a multiple of the damages amount.

19.     Mr. Grant also seeks "injunctive … relief" based on the conduct alleged in the Complaint, which includes sales of "any product with a written warranty that costs more than $15." (Compl. ¶¶ 1, 4.) "[T]he cost to a defendant of complying with an injunction sought by the plaintiff may properly be considered in determining the amount in controversy." *See, e.g.*, *Uhl v. Thoroughbred Tech. and Telecomms., Inc.*, 309 F.3d 978, 983 (7th Cir. 2002); *Miller v. Gen. Motors Corp.*, 2002 WL 31375526, at *1 (N.D. Ill. Oct. 18, 2002) ("[T]he cost to a

defendant of complying with injunctive relief is an appropriate measure in determining whether the federal amount in controversy requirement is met."); *see also BEM I, L.L.C. v. Anthropologies, Inc.*, 301 F.3d 548, 553 (7th Cir. 2002) ("[R]emoval is a privilege of a defendant, not of a plaintiff. ... Whether his loss will also be the plaintiff's gain is irrelevant."). While unnecessary to reach the jurisdictional threshold, Costco's aggregated expenses to design, draft, implement, and comply with a policy "provid[ing Illinois] consumers with access to any written warranty for a product costing more than $15" for the foreseeable future should be included in the jurisdictional amount. (Compl. ¶ 2.)

20.     Mr. Grant also seeks attorneys' fees and expert fees. (Compl. at 14.) "[A]ttorneys' fees up to the time of removal count toward the jurisdictional amount." *Oshana*, 472 F.3d at 512. The Magnuson-Moss Act permits a court to award a successful plaintiff "a sum equal to the aggregate amount of costs and expenses ... determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action." 15 U.S.C. § 2310(d)(2). In at least some class action cases involving the Magnuson-Moss Act, class counsel have sought, and been awarded, approximately $2 million or more in attorneys' fees. *See, e.g.*, *In re Sears, Roebuck and Co. Front–Loading Washer Prods. Liability Litig.*, 867 F.3d 791, 793 (7th Cir. 2017) (awarding $2.7 million in attorneys' fees); *Skelton v. Gen. Motors Corp.*, 661 F. Supp. 1368, 1394 (N.D. Ill. 1987) (awarding $1,933,197.30 in attorneys' fees). These amounts should also be included in the amount in controversy.

21.     "Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5,000,000 ... the case belongs in federal court." *Blomberg*, 639 F.3d at 764. Without admitting Mr. Grant's entitlement to any relief whatsoever, Mr. Grant's complaint has placed well in excess of $5 million in controversy for purposes of removal.

### *The Minimal Diversity Requirement is Satisfied*

22.     Under 28 U.S.C. § 1332(d)(2)(A), a district court may assert jurisdiction over a class action in which "any member of a class of plaintiffs is a citizen of a State different from any defendant."

6

23.     "[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."  28 U.S.C. § 1332(c)(1).  Federal courts apply the "nerve center" test to determine a corporation's principal place of business.  *Hertz Corp. v. Friend*, 559 U.S. 77, 80–81, 92–93 (2010).  The company's officers or members "direct, control, and coordinate" the company's activities from the "nerve center."  *Id*. at 92–93.  The "nerve center" will "normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination."  *Id*. at 93.  Mr. Grant correctly alleges that Costco is incorporated under the laws of Washington and has its principal place of business in Washington.  (Compl. ¶ 9.)  In sum, Costco is a citizen of the State of Washington.

24.     Mr. Grant alleges he is "a resident of Cook County, Illinois."  (Compl. ¶ 8.)  "The citizenship of an individual for purposes of diversity jurisdiction is considered to be that of his domicile," and "[t]he domicile is the state in which a person resides with the intention of remaining."  *Seaboard Fin. Co. v. Davis*, 276 F. Supp. 507, 509 (N.D. Ill. 1967).  On information and belief, Mr. Grant does not reside in the State of Washington and is a citizen of the State of Illinois.

25.     Mr. Grant purports to bring this action on behalf of "[a]ll citizens of Illinois with active Costco memberships.  (Compl. ¶ 37.)  Thus, the proposed class exclusively includes "citizens of Illinois."  (*Ibid*.)

26.     Accordingly, diversity of citizenship exists under 28 U.S.C. § 1332(d)(2)(A).  The diversity between Mr. Grant and Costco not only satisfies CAFA's minimal diversity requirements, but also precludes the "local controversy" and "home state" exceptions in 28 U.S.C. § 1332(d)(3) & (d)(4), for which Mr. Grant would bear the burden of proof in any event.

## THE ACTION IS REMOVABLE BASED ON DIVERSITY

27.     For the same reasons stated above, the Court has original jurisdiction of this action because Mr. Grant's claims alone exceed the $75,000 threshold for individual actions.  *See* 28 U.S.C. § 1332(a).

28.     As explained above, Mr. Grant and Costco are citizens of different states.

29.     Mr. Grant's individual claim also exceeds $75,000 based on his individual requests for injunctive relief, attorneys' fees, experts' fees, and other relief, including his potential claims for damages and punitive damages.

## COSTCO SATISFIES THE REMAINING REQUIREMENTS FOR REMOVAL

30.     This Notice of Removal is timely under 28 U.S.C. § 1446(b) because Costco filed it within thirty days after service of process, which took place on August 2, 2022.

31.     Costco may remove this action to this Court under 28 U.S.C. §§ 1441, 1446, and 1453.  Because Mr. Grant filed this action in the Circuit Court of Cook County, Illinois, the United States District Court for the Northern District of Illinois is the proper forum for the case to be removed, pursuant to 28 U.S.C. §§ 93(a)(1) and 1446(a).

32.     Copies of all process, pleadings, and orders served on Costco in the State Court Lawsuit are attached as **Exhibit A**, as required by 28 U.S.C. § 1446(a).

33.     Costco will promptly file a copy of the Notice of Removal with the Clerk of the Circuit Court of Cook County and give written notice of the filing of this Notice of Removal to Mr. Grant under 28 U.S.C. § 1446(d).

34.     Costco reserves the right to amend or supplement this Notice of Removal and reserves all rights and defenses, including those available under Federal Rule of Civil Procedure 12 and applicable law.

WHEREFORE, Costco removes the above-described civil action from the Circuit Court of Cook County, Illinois to the United States District Court for the Northern District of Illinois for further proceedings.

DATED:  September 1, 2022

Respectfully submitted,

By:   /s/ James Howard

Attorneys for
COSTCO WHOLESALE CORPORATION

DAVIS WRIGHT TREMAINE LLP
James Howard
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
Tel: (206) 622-3150
jimhoward@dwt.com

DAVIS WRIGHT TREMAINE LLP
James H. Moon (*pro hac vice* forthcoming)
Peter K. Bae (*pro hac vice* forthcoming)
865 S. Figueroa Street, Suite 2400
Los Angeles, CA 90017-2566
Tel: (213) 633-6800
jamesmoon@dwt.com
peterbae@dwt.com

# EXHIBIT A

* 5 0 1 9 1 2 6 6 *
FILED
7/20/2022 4:14 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022CH06947
Calendar, 2
18755910

| | | |
|---|---|---|
| 2120 - Served | 2121 - Served | 2620 - Sec. of State |
| 2220 - Not Served | 2221 - Not Served | 2621 - Alias Sec of State |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |

Summons - Alias Summons                                           (03/15/21) CCG 0001 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Name all Parties

Sam Grant, individually and on behalf of all
others similarly situated

Plaintiff(s)

v.

Costco Wholesale Corporation

Case No. 2022CH06947

Defendant(s)

Costco Wholesale Corporation,
c/o CT Corporation System, 208 S LaSalle St,
Suite 814, Chicago, IL 60604

Address of Defendant(s)

Please serve as follows (check one): ◌ Certified Mail   ◉ Sheriff Service   ◌ Alias

### SUMMONS

To each Defendant:

You have been named a defendant in the complaint in this case, a copy of which is hereto attached.
You are summoned and required to file your appearance, in the office of the clerk of this court,
within 30 days after service of this summons, not counting the day of service. If you fail to do so, a
judgment by default may be entered against you for the relief asked in the complaint.

### THERE IS A FEE TO FILE YOUR APPEARANCE.

**FILING AN APPEARANCE: Your appearance date is NOT a court date.** It is the deadline
for filing your appearance/answer. To file your appearance/answer **YOU DO NOT NEED
TO COME TO THE COURTHOUSE, unless you are unable to eFile your appearance/
answer.** You can download an Appearance form at http://www.illinoiscourts.gov/Forms/
approved/procedures/appearance.asp. After completing and saving your Appearance form, you can
electronically file (e-File) it with the circuit clerk's office.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**

cookcountyclerkofcourt.org

Summons - Alias Summons                                                    * (03/15/21) CCG 0001 B

**E-FILING:** E-filing is now mandatory with limited exemptions. To e-File, you must first create an account with an e-Filing service provider. Visit http://efile.illinoiscourts.gov/ service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-Filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

**FEE WAIVER:** If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

**COURT DATE:** Your court date will be sent to your e-File email account or the email address you provided to the clerk's office. You can also call or email the clerk's office to request your next court date. You will need to provide your case number OR, if unknown, the name of the Plaintiff or Defendant. For criminal case types, you will also need to provide the Defendant's birthdate.

**REMOTE APPEARANCE:** You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance". Call the Circuit Clerk at (312) 603-5030 or visit their website at www. cookcountyclerkofcourt.org to find out how to do this.

Contact information for each of the Clerk's Office locations is included with this summons. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

To the officer: (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

◉ Atty. No.: 64846
◯ Pro Se 99500

Witness date _____
7/20/2022 4:14 PM IRIS Y. MARTINEZ

Name: J. Dominick Larry, Nick Larry Law LLC

Atty. for (if applicable):                         _____
                                                    Iris Y. Martinez, Clerk of Court
Plaintiff

Address: 1720 W Division St                        ☐ Service by Certified Mail: _____

City: Chicago                                       ☐ Date of Service: _____
                                                    (To be inserted by officer on copy left with employer or other person)
State: IL    Zip: 60622

Telephone: 773.694.4669

Primary Email: nick@nicklarry.law

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
**cookcountyclerkofcourt.org**
Page 2 of 3

\* 5 0 1 9 1 2 6 6 \*

## GET YOUR COURT DATE BY CALLING IN OR BY EMAIL

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date. Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

### CHANCERY DIVISION
**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-5133

### CIVIL DIVISION
**Court date EMAIL:** CivCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-5116

### COUNTY DIVISION
**Court date EMAIL:** CntyCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION
**Court date EMAIL:** DRCourtDate@cookcountycourt.com
OR
ChildSupCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-6300

### DOMESTIC VIOLENCE
**Court date EMAIL:** DVCourtDate@cookcountycourt.com
Gen. Info:   (312) 325-9500

### LAW DIVISION
**Court date EMAIL:** LawCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-5426

### PROBATE DIVISION
**Court date EMAIL:** ProbCourtDate@cookcountycourt.com
Gen. Info:   (312) 603-6441

### ALL SUBURBAN CASE TYPES

### DISTRICT 2 - SKOKIE
**Court date EMAIL:** D2CourtDate@cookcountycourt.com
Gen. Info:   (847) 470-7250

### DISTRICT 3 - ROLLING MEADOWS
**Court date EMAIL:** D3CourtDate@cookcountycourt.com
Gen. Info:   (847) 818-3000

### DISTRICT 4 - MAYWOOD
**Court date EMAIL:** D4CourtDate@cookcountycourt.com
Gen. Info:   (708) 865-6040

### DISTRICT 5 - BRIDGEVIEW
**Court date EMAIL:** D5CourtDate@cookcountycourt.com
Gen. Info:   (708) 974-6500

### DISTRICT 6 - MARKHAM
**Court date EMAIL:** D6CourtDate@cookcountycourt.com
Gen. Info:   (708) 232-4551

\* 5 0 1 9 1 2 6 6 \*

FILED
7/20/2022 4:14 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022CH06947
Calendar, 2
18755910

| | | |
|---|---|---|
| 2120 - Served | 2121 - Served | 2620 - Sec. of State |
| 2220 - Not Served | 2221 - Not Served | 2621 - Alias Sec of State |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |

Summons - Alias Summons                                      (03/15/21) CCG 0001 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

Name all Parties

Sam Grant, individually and on behalf of all
others similarly situated

Plaintiff(s)

v.

Costco Wholesale Corporation

Defendant(s)

Case No. **2022CH06947**

Costco Wholesale Corporation,
c/o CT Corporation System, 208 S LaSalle St,
Suite 814, Chicago, IL 60604

Address of Defendant(s)

Please serve as follows (check one):  ○ Certified Mail  ● Sheriff Service  ○ Alias

### SUMMONS

To each Defendant:

You have been named a defendant in the complaint in this case, a copy of which is hereto attached.
You are summoned and required to file your appearance, in the office of the clerk of this court,
within 30 days after service of this summons, not counting the day of service. If you fail to do so, a
judgment by default may be entered against you for the relief asked in the complaint.

### THERE IS A FEE TO FILE YOUR APPEARANCE.

**FILING AN APPEARANCE: Your appearance date is NOT a court date.** It is the deadline
for filing your appearance/answer. To file your appearance/answer **YOU DO NOT NEED
TO COME TO THE COURTHOUSE, unless you are unable to eFile your appearance/
answer.** You can download an Appearance form at http://www.illinoiscourts.gov/Forms/
approved/procedures/appearance.asp. After completing and saving your Appearance form, you can
electronically file (e-File) it with the circuit clerk's office.

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**

cookcountyclerkofcourt.org

Summons - Alias Summons                                        (03/15/21) CCG 0001 B

**E-FILING:** E-filing is now mandatory with limited exemptions. To e-File, you must first create an account with an e-Filing service provider. Visit http://efile.illinoiscourts.gov/ service-providers.htm to learn more and to select a service provider.

If you need additional help or have trouble e-Filing, visit http://www.illinoiscourts.gov/faq/gethelp.asp or talk with your local circuit clerk's office. If you cannot e-file, you may be able to get an exemption that allows you to file in-person or by mail. Ask your circuit clerk for more information or visit www.illinoislegalaid.org.

**FEE WAIVER:** If you are unable to pay your court fees, you can apply for a fee waiver. For information about defending yourself in a court case (including filing an appearance or fee waiver), or to apply for free legal help, go to www.illinoislegalaid.org. You can also ask your local circuit clerk's office for a fee waiver application.

**COURT DATE:** Your court date will be sent to your e-File email account or the email address you provided to the clerk's office. You can also call or email the clerk's office to request your next court date. You will need to provide your case number OR, if unknown, the name of the Plaintiff or Defendant. For criminal case types, you will also need to provide the Defendant's birthdate.

**REMOTE APPEARANCE:** You may be able to attend this court date by phone or video conference. This is called a "Remote Appearance". Call the Circuit Clerk at (312) 603-5030 or visit their website at www. cookcountyclerkofcourt.org to find out how to do this.

Contact information for each of the Clerk's Office locations is included with this summons. The Clerk's office is open Mon - Fri, 8:30 am - 4:30 pm, except for court holidays.

To the officer: (Sheriff Service)

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than thirty (30) days after its date.

| | |
|---|---|
| ● Atty. No.: 64846 | Witness date _____ |
| ○ Pro Se 99500 | 7/20/2022 4:14 PM IRIS Y. MARTINEZ |
| Name: J. Dominick Larry, Nick Larry Law LLC | _____ |
| Atty. for (if applicable): | Iris Y. Martinez, Clerk of Court |
| Plaintiff | ☐ Service by Certified Mail: _____ |
| Address: 1720 W Division St | ☐ Date of Service: _____ |
| City: Chicago | (To be inserted by officer on copy left with employer or other person) |
| State: IL   Zip: 60622 | |
| Telephone: 773.694.4669 | |
| Primary Email: nick@nicklarry.law | |

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org

\* 5 0 1 9 1 2 6 6 \*

## GET YOUR COURT DATE BY CALLING IN OR BY EMAIL

**CALL OR SEND AN EMAIL MESSAGE** to the telephone number or court date email address below for the appropriate division, district or department to request your next court date. Email your case number, or, if you do not have your case number, email the Plaintiff or Defendant's name for civil case types, or the Defendant's name and birthdate for a criminal case.

### CHANCERY DIVISION
**Court date EMAIL:** ChanCourtDate@cookcountycourt.com
Gen. Info:     (312) 603-5133

### CIVIL DIVISION
**Court date EMAIL:**  CivCourtDate@cookcountycourt.com
Gen. Info:     (312) 603-5116

### COUNTY DIVISION
**Court date EMAIL:**  CntyCourtDate@cookcountycourt.com
Gen. Info:     (312) 603-5710

### DOMESTIC RELATIONS/CHILD SUPPORT DIVISION
**Court date EMAIL:** DRCourtDate@cookcountycourt.com
                          OR
          ChildSupCourtDate@cookcountycourt.com
Gen. Info:     (312) 603-6300

### DOMESTIC VIOLENCE
**Court date EMAIL:**  DVCourtDate@cookcountycourt.com
Gen. Info:     (312) 325-9500

### LAW DIVISION
**Court date EMAIL:**  LawCourtDate@cookcountycourt.com
Gen. Info:     (312) 603-5426

### PROBATE DIVISION
**Court date EMAIL:**  ProbCourtDate@cookcountycourt.com
Gen. Info:     (312) 603-6441

### ALL SUBURBAN CASE TYPES

#### DISTRICT 2 - SKOKIE
**Court date EMAIL:**  D2CourtDate@cookcountycourt.com
Gen. Info:     (847) 470-7250

#### DISTRICT 3 - ROLLING MEADOWS
**Court date EMAIL:**  D3CourtDate@cookcountycourt.com
Gen. Info:     (847) 818-3000

#### DISTRICT 4 - MAYWOOD
**Court date EMAIL:**  D4CourtDate@cookcountycourt.com
Gen. Info:     (708) 865-6040

#### DISTRICT 5 - BRIDGEVIEW
**Court date EMAIL:**  D5CourtDate@cookcountycourt.com
Gen. Info:     (708) 974-6500

#### DISTRICT 6 - MARKHAM
**Court date EMAIL:**  D6CourtDate@cookcountycourt.com
Gen. Info:     (708) 232-4551

**Iris Y. Martinez, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org

earing Date: 11/17/2022 10:00:00 AM
ocation: Court Room 2601
Judge: Mitchell, Raymond W.

1:22-cv-04704 Document #: 1 Filed: 09/01/22 Page 17 of 35 PageID #:1

7/18/2022 10:31 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022CH06947
Calendar, 2
18720958

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| SAM GRANT, individually and on behalf of all others similarly situated, | |
| *Plaintiff,* | Case No.   **2022CH06947** |
| v. | |
| COSTCO WHOLESALE CORPORATION, | |
| *Defendant.* | |

## CLASS ACTION COMPLAINT

Plaintiff Sam Grant, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Costco Wholesale Corporation. Plaintiff alleges the following based upon personal knowledge as to Plaintiff's own experiences, and as to all other matters upon information and belief, including investigation conducted by Plaintiff's counsel.

### NATURE OF THE CASE

1.     Plaintiff Sam Grant ("Plaintiff") brings this action seeking injunctive and declaratory relief curtailing unlawful business practices related to consumer warranties for products sold by Costco Wholesale Corporation ("Costco" or "Defendant").

2.     Under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301–2312 ("Magnuson-Moss," the "Act," or "MMWA"), and its implementing regulations, 16 CFR §§ 700.1, *et seq.*, retailers like Defendant  must provide consumers with access to any written warranty for a product costing more than $15, prior to the point of sale.

1

3.      The purpose of Magnuson-Moss's "Pre-Sale Availability Rule" is to ensure that consumers could get complete information about warranty terms and conditions. By providing consumers with a way of learning what warranty coverage is offered on a product *before* they buy, the Rule gives consumers a way to know what to expect if something goes wrong, and thus helps to increase customer satisfaction. Congress also wanted to ensure that consumers could compare warranty coverage before buying. By comparing, consumers can choose a product with the best combination of price, features, and warranty coverage to meet their individual needs. Thus, the Pre-Sale Availability Rule promotes competition on the basis of warranty coverage. By ensuring that consumers can get warranty information, the Rule encourages sales promotion on the basis of warranty coverage and competition among companies to meet consumer preferences through various levels of warranty coverage.

4.      To comply with Magnuson-Moss's Pre-Sale Availability Rule, a retailer must make the terms of a product's written warranty "readily available for examination by the prospective buyer" by either (1) displaying the warranty "in close proximity" to the product or (2) placing signs around the store in prominent locations alerting the consumer that he or she may inspect product warranties upon request. This obligation extends to any product with a written warranty that costs more than $15. 16 C.F.R. § 702.3.

5.      Despite these obligations under federal law, Defendant does not provide consumers with access to written warranties, prior to sale, in a manner that complies with the Pre-Sale Availability Rule.

6.      Defendant's noncompliance has a self-serving motive: Defendant offers "protection plans" or extended warranties to consumers at the point of sale, which provide

coverage that is duplicative of the free manufacturer's warranty that already comes with the product. If the consumer is not made aware of this warranty, or is prohibited from learning of the warranty's specific terms until after the point of sale, then he or she is more likely to buy Defendant's duplicative "protection plan."

7.      Plaintiff, individually and on behalf of all other similarly situated residents of Illinois, seeks injunctive and declaratory relief against Defendant for its violations of Magnuson-Moss. Specifically, Plaintiff seeks to require Defendant to provide Illinois consumers with pre-sale access to product warranties as required by the Pre-Sale Availability Rule of Magnuson-Moss.

## PARTIES

8.      Plaintiff Sam Grant is a resident of Cook County, Illinois. In summer of 2022, Plaintiff purchased a membership at Costco, with the intent of, *inter alia*, purchasing products which cost more than $15 and are subject to a warranty from the Product's manufacturer. However, Defendant does not make product warranties available to its customers—including Plaintiff—prior to sale, nor does Defendant alert consumers of their legal right to review the product warranties prior to the point of sale, in a manner compliant with the Pre-Sale Availability Rule.

9.      Defendant Costco Wholesale Corporation is a retailer headquartered and incorporated in Washington. Defendant primarily offers consumer goods, including goods over $15 that are subject to manufacturers' warranties.

## JURISDICTION AND VENUE

10.     Substantial acts giving rise to the causes of action asserted herein occurred in this State and within this venue.

11.     This Court has personal jurisdiction over Defendant because it purposefully directs its conduct at Illinois; transacts business in Illinois; is registered to do business in Illinois; has substantial aggregate contacts with Illinois; engaged and is engaging in conduct that has and had a direct, substantial, reasonably foreseeable, and intended effect of causing injury to persons in Illinois; and purposely availed itself of the laws of Illinois.

12.     Defendant's activities in Illinois gave rise to the claims identified herein, both suffered by Plaintiff and by members of the proposed Class. Defendant operates retail stores in Illinois, selling products that are subject to the disclosure requirements of the Pre-Sale Availability Rule, but not complying with the requirements of the Rule.

13.     Venue is proper in Cook County because Defendant conducts substantial business in Cook County and the conduct giving rise to Plaintiff's claims occurred in Cook County.

## EXCLUSIVE STATE COURT JURISDICTION
## PURSUANT TO 15 U.S.C. § 2310

14.     Exclusive jurisdiction for this action lies with this Court, pursuant to 15 U.S.C. § 2310.

15.     Magnuson-Moss authorizes injured consumers to bring suit for "legal and equitable relief … in any court of competent jurisdiction in any State." 15 U.S.C. § 2310(d)(1)(A).

16.     However, the Act imposes specific limitations on the exercise of jurisdiction by federal courts, stating that "no claim shall be cognizable" in federal district court "(A) if the amount in controversy of any individual claim is less than the sum or value of $25; (B) if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit; or (C)

4

if the action is brought as a class action, and the number of named plaintiffs is less than one hundred." *Id.* § 2310(d)(3)(A)–(C).

17. In this action, Plaintiff solely seeks equitable and declaratory relief individually and on behalf of all members of the Class, in the form of Defendant complying with the Pre-Sale Availability Rule. Thus, neither Plaintiff nor any member of the putative Class asserts an individual claim for damages at all, much less one valued at $25 or greater. Neither of the requirements for federal jurisdiction set forth under § 2310(d)(3)(A) or § 2310(d)(3)(B) is satisfied.

18. Further, Plaintiff Sam Grant is the only named plaintiff in this action. Because there are not one hundred named plaintiffs in this action, the requirement for federal jurisdiction set forth under § 2310(d)(3)(C) is not satisfied.

19. Because none of the requirements for federal jurisdiction are satisfied under § 2310(d)(3), this Court has exclusive jurisdiction over this action.

## COMMON FACTUAL ALLEGATIONS

### I. Magnuson-Moss, the Pre-Sale Availability Rule, and Defendant's Non-Compliance

20. Magnuson-Moss is a consumer-protection law passed in 1975 to clarify how written warranties may be used when marketing products to consumers.[1] At its most fundamental, a warranty is a promise by the warrantor to stand behind its product. It is a statement about the integrity of the product and a commitment to correct problems if the product fails.[2]

---

[1]     15 U.S.C. §§ 2301, *et seq.*
[2]     *Businessperson's Guide to Federal Warranty*, Federal Trade Commission, https://www.ftc.gov/business-guidance/resources/businesspersons-guide-federal-warranty-law (last accessed July 8, 2022).

21.     In passing Magnuson-Moss, Congress wanted to encourage sellers to provide written warranties to assure consumers and to foster competition for the best products. Although sellers are not required to provide written warranties, many consumers will be skeptical of products that do not have one.

22.     Magnuson-Moss creates multiple consumer protections related to warranties, and most deal with the substance of the warranties, themselves (*i.e.*, what a warrantor must—and must not—include as a term or a representation). But Magnuson-Moss also recognizes the need of consumers to have access to warranties when evaluating whether or not to buy a given product, as the strength of the warranty is a meaningful data point when considering a new purchase. Consumers have a right to choose a product with the best combination of price, features, and warranty coverage to meet their individual needs. As Congressman Moss stated in support of the law:

> One of the most important effects of this bill will be its ability to relieve consumer frustration by promoting understanding and providing meaningful remedies. This bill should also foster intelligent consumer decisions by making warranties understandable. At the same time, warranty competition should be fostered since consumers would be able to judge accurately the content and differences between warranties and competing consumer products.
>
> Perhaps one of the potentially most important and long range effects of this bill resides in its attempt to assure better product reliability. The bill ... attempts to organize the rules of the warranty game in such a fashion to stimulate manufacturers, for competitive reasons, to produce more reliable products. This is accomplished using the rules of the marketplace by giving the consumer enough information and understanding about warranties so as to enable him to look to the warranty duration of a guaranteed product as an indicator of the product reliability.[3]

---

[3]     Federal Register/Vol. 40, No. 251/60168.

The Senate report accompanying the introduction of Magnuson-Moss further clarified the need for and purpose of the law:

> When the use of a warranty in conjunction with the sale of a product first became commonplace, it was typically a concept that the contracting parties understood and bargained for, usually at arms length. One could decide whether or not to purchase a product with a warranty and bargain for that warranty accordingly. Since then, the relative bargaining power of those contracting for the purchase of consumer products has changed radically. Today, most consumers have little understanding of the frequently complex legal implications of warranties on consumer products. Typically, a consumer today cannot bargain with consumer product manufacturers or suppliers to obtain a warranty or to adjust the terms of a warranty voluntarily offered. Since almost all consumer products sold today are typically done so with a contract of adhesion, there is no bargaining power over contractual terms. [Magnuson-Moss] attempts to remedy some of the defects resulting from this gross inequality of bargaining power and return the sense of fair play to the warranty field that has been lost through the years as the organizational structure of our society has evolved. The warranty provisions of [Magnuson-Moss] are not only designed to make warranties understandable to consumers, but to redress the ill effects resulting from the imbalance which presently exists in the relative bargaining power of consumers and suppliers of consumer products.[4]

23.     Thus, Magnuson-Moss has the "Pre-Sale Availability Rule," which ensures that consumers get complete information about warranty terms and conditions of a given product (of $15 or more), prior to purchase.[5] The Rule places distinct obligations both on warrantors *and* retailers (like Defendant).

---

[4]     Senate Comm. On Commerce, Report on S. 356, S. Rep. No. 93-151, 93d Cong., 1st Sess. (1973), at 6.

[5]     *See,* 16 C.F.R. § 702.3.

24.     Most relevant to the instant litigation, pursuant to the Rule, a "seller"[6] of any consumer product costing more than \$15 and subject to a written warranty

> shall make a text of the warranty readily available for examination by the prospective buyer by:
>
> **(1)** Displaying it in close proximity to the warranted product (including through electronic or other means ...), or
>
> **(2)** Furnishing it upon request prior to sale (including through electronic or other means ...) and placing signs reasonably calculated to elicit the prospective buyer's attention in prominent locations in the store or department advising such prospective buyers of the availability of warranties upon request.[7]

25.     While the Rule allows sellers to display or otherwise provide the text of a warranty "through electronic ... means," the FTC has made clear that it is not enough for the seller merely to refer a customer to a product manufacturer's website. In allowing for the electronic presentment of warranty terms,

> Congress's intention ... was not to disturb prospective purchasers' ability to obtain the full warranty terms at the point of sale, as envisioned by the Pre-Sale Availability Rule. While consumers with electronic devices and Internet connectivity may be able to review warranty terms at the point of sale by visiting the Web site that contains the warranty terms, not all consumers have such devices and Internet connectivity.[8]

26.     Thus, all retailers, including Defendant, are obligated to have a mechanism by which the full terms of a product's written warranty can be viewed by a consumer—

---

[6]     Defined as "any person who sells or offers for sale for purposes other than resale or use in the ordinary course of the buyer's business any consumer product." 16 C.F.R. § 702.1(e).
[7]     16 C.F.R. § 702.3(a) ("Duties of seller").
[8]     Federal Register/Vol. 81, No. 179/63666.

without said consumer resorting to his or her own Internet-enabled device—prior to the point of sale.

27.     Defendant fails to satisfy this obligation. Indeed, virtually all the products—if not every single product—sold in Defendant's stores are presented to the consumer without any access to the product's manufacturer's warranty, pre-sale. Instead, the first time the consumer can view the manufacturer's warranty is upon opening the product's packaging, after purchase.

28.     Defendant does not display products' manufacturers' warranties in close proximity to the products costing over $15; nor does Defendant place signs reasonably calculated to elicit the prospective buyer's attention, in prominent locations in the store or department, advising consumers of the availability of manufacturers' warranties upon request. Indeed, Defendant is unable to provide consumers with copies of manufacturers' warranties upon request, as it does not have said warranties. This is in direct violation of the Pre-Sale Availability Rule. 16 C.F.R. § 702.3(a).

**II.      The Rise of "Add On" Warranties Offered by Retailers Like Defendant**

29.     There is a financial incentive for Defendant's failure to provide consumers with product warranties. Defendant, like many other retailers, makes a significant amount of money by selling consumers "protection plans," or "extended warranties" for their products.

30.     These plans are big business—according to a recent report, the global extended warranty industry generated $120.79 billion in 2019, and is projected to reach

$169.82 billion by 2027, growing at a compound annual growth rate of 7.4% from 2020-
2027.[9]

31.     However, these plans are also largely unnecessary, as they provide coverage
that is duplicative of the given product's existing warranty, at least for the life of the
manufacturer's warranty.[10]

32.     At present, Defendant partners with Allstate to offer protection plans to
consumers, and thus is disincentivized from alerting consumers to the warranty that already
comes with their product free of charge. This makes Defendant's violation of the Pre-Sale
Availability Rule all the more egregious.

## PLAINTIFF'S SPECIFIC ALLEGATIONS

33.     In 2022, Plaintiff purchased a Costco membership. In so doing, Plaintiff
wishes to purchase, *inter alia*, at least one product costing more than $15 that was subject
to a manufacturer's warranty.

34.     However, Defendant does not display manufacturers' warranties in close
proximity to their accompanying products (indeed, Defendant does not display any
manufacturer's warranty for products anywhere in its stores); nor does Defendant place
signs reasonably calculated to elicit Plaintiff's or other customers' attention, in prominent

---

[9]     *Extended Warranty Market to Reach $169.82 Bn, Globally, by 2027 at 7.4%
CAGR: Allied Market Research*, Yahoo (Jan. 24, 2022),
https://www.yahoo.com/now/extended-warranty-market-reach-169-
083000210.html?guccounter=1.
[10]    Beth Braverman, *Why You Should Steer Clear of Extended Warranties*, Consumer
Reports (Dec. 22, 2018), https://www.consumerreports.org/extended-warranties/steer-
clear-extended-warranties-a3095935951/ ("Two-thirds of in-store electronic shoppers and
nearly three-quarters of appliance purchasers say that an associate has pitched one to
them.").

locations in the store or department, advising them of the availability of manufacturers' warranties upon request.

35.     Plaintiff cares about the substance of product warranties, and the terms of a written warranty would impact Plaintiff's purchasing decisions—*i.e.*, one product might be chosen over another if that product had a more expansive warranty.

36.     Plaintiff anticipates buying new products costing over $15 that are subject to manufacturer warranties in the future, and would consider purchasing said products from Defendant's stores, but does not wish to have his rights under Magnuson-Moss thwarted by Defendant's failure to comply with the Pre-Sale Availability Rule.

**CLASS ALLEGATIONS**

37.     Plaintiff brings this action on behalf of the following class of similarly situated individuals pursuant to Illinois Code of Civil Procedure 2-801: All citizens of Illinois with active Costco memberships.

38.     Plaintiff reserves the right to modify or refine the Class definition based upon discovery of new information or to accommodate any concerns of the Court.

39.     Excluded from the Class are Defendant, and Defendant's parents, subsidiaries, affiliates, officers and directors, any entity in which any defendant has a controlling interest, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members, and members of the staffs of the judges to whom this case may be assigned.

40.     Upon information and belief, the Class contains thousands of individuals, at least. The Class is therefore so numerous that joinder of all members is impracticable.

* 5 0 1 9 1 2 6 6 *

The precise number of Class members can be determined by reference to Defendant's records.

41.     Plaintiff's claims are typical of the claims of members of the proposed Class because, among other things, Plaintiff and members of the Class sustained similar injuries as a result of Defendant's uniform wrongful conduct and their legal claims arise from the same events and wrongful conduct by Defendant.

42.     Common questions of law and fact will predominate over any individualized inquiries. Those common questions include:

> i.  whether Defendant's acts and practices complained of herein violate Magnuson-Moss; and
>
> ii.  the appropriate injunctive relief to ensure Defendant no longer violates the Pre-Sale Availability Rule.

43.     Absent a class action, most Class members would find their claims prohibitively expensive to bring individually and would be left without an adequate remedy. Class treatment of the common questions is also superior because it conserves the Court's and Parties' resources and promotes efficiency and consistency of adjudication.

44.     Plaintiff will adequately represent the Class. Plaintiff has retained counsel experienced in consumer class actions. Plaintiff and Plaintiff's counsel are committed to vigorously litigating this action on the Class's behalf and have the resources to do so. Neither Plaintiff nor Plaintiff's counsel have any interest adverse to the Class.

45.     Defendant has acted on grounds generally applicable to Plaintiff and the Class, requiring the Court's imposition of uniform relief, including injunctive and declaratory relief to the Class.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Violation of the Magnuson-Moss Warranty Act,
### 15 U.S.C. §§ 2301, *et seq.*

46.     Plaintiff incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

47.     Plaintiff and Class members are "consumers" as defined in MMWA, 15 U.S.C. § 2301(3).

48.     Defendant is a "seller" as defined in MMWA, 16 C.F.R. § 702.1(e).

49.     Defendant sells products with "written warranties" as defined in MMWA, 15 U.S.C. § 2301(6); 16 C.F.R. § 702.1(c).

50.     Defendant sells "consumer products," as defined in MMWA, 15 U.S.C. § 2301(1); 16 C.F.R. § 702.1(b).

51.     Consistent with, *inter alia*, 16 C.F.R. § 702.3, as a seller of consumer products with written warranties, for all products costing more than $15 Defendant must either display manufacturers' warranties in close proximity to the relevant products, or else place signs reasonably calculated to elicit the prospective buyer's attention, in prominent locations in the store or department, advising consumers of the availability of manufacturers' warranties upon request. 16 C.F.R. § 702.3(a). In direct violation of Magnuson-Moss's Pre-Sale Availability Rule, Defendant does neither of these things.

52.     Plaintiff, Class members, and members of the general public have been damaged as a result of Defendant's unfair, unlawful, and fraudulent conduct alleged herein.

53.     Because Plaintiff and the Class members have purchased, or would like to purchase, and are likely to purchase products over $15 that are subject to manufacturer

warranties, Plaintiff and Class members are entitled to injunctive relief and corresponding declaratory relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that this Court:

a. Certify this case as a class action, appoint Plaintiff as Class representative, and appoint Plaintiff's counsel to represent the Class;

b. Find that Defendant's actions, as described herein, constitute violations of Magnuson-Moss;

c. Entered judgment against Defendant for all injunctive, declaratory, and other equitable relief sought;

d. Award all costs, including experts' fees, attorneys' fees, and the costs of prosecuting this action; and

e. Grant such other legal and equitable relief as the Court may deem appropriate.

Dated: July 18, 2022

**SAM GRANT**, individually and on behalf of all others similarly situated,

s/ J. Dominick Larry
Plaintiff's counsel

J. Dominick Larry
NICK LARRY LAW LLC
1720 W. Division St.
Chicago, IL 60622
T: 773.694.4669
F: 773.694.4691
nick@nicklarry.law
Firm ID: 64846

*Plaintiff's Counsel*

14

* 5 0 1 9 1 2 6 6 *
FILED
7/20/2022 4:14 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022CH06947
Calendar, 2
18755910

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT, CHANCERY DIVISION**

| | |
|---|---|
| SAM GRANT, individually and on behalf of all others similarly situated, | |
| *Plaintiff,* | Case No. 2022CH06947 |
| | Calendar 2 |
| v. | Hon. Raymond W. Mitchell |
| COSTCO WHOLESALE CORPORATION, | Courtroom 2601 |
| *Defendant.* | |

## MOTION FOR CLASS CERTIFICATION AND MEMORANDUM IN SUPPORT

Plaintiff Sam Grant, through counsel, moves this Court for an order certifying this case as a class action under Illinois Code of Civil Procedure Section 2-801. Plaintiff requests that the Court enter and continue the motion until after discovery relating to class certification, at which time Plaintiff will submit a more detailed supporting memorandum of points and authorities.[1]

### INTRODUCTION

The Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301–2312 (the "Act"), requires retailers to provide consumers with access to any written warranty for a product costing more than $15, prior to the point of sale. Defendant fails to do so. Accordingly, Plaintiff sued, seeking injunctive and declaratory relief, attorneys' fees, and costs as authorized by the Act.

Plaintiff's claims should be certified on behalf of the class proposed below. Defendant acted uniformly toward the class: it sold products to the Class Members without making its

---

[1] Plaintiff files this motion before discovery to prevent Defendant from attempting to moot Plaintiffs' representative claims by tendering Plaintiff full relief while leaving the proposed Class without relief and subject to further and ongoing harm. *See Joiner v. SVM Mgmt.*, 2020 IL 124671, ¶ 58 (holding "that an effective tender made before a named plaintiff purporting to represent a class files a class-certification motion satisfies the named plaintiff's individual claim and moots her interest in the litigation.").

warranty available at the point of sale, in violation of Magnuson-Moss. *See* Compl. ¶¶ 27–28. Those facts, which will be proven in discovery, will establish Defendant's liability to Plaintiff and each proposed Class member. With such uniformity, certification is proper under Section 2-801.

Accordingly, Plaintiff seeks to certify a class of "All citizens of Illinois who purchased one or more products from Defendant that cost over $15 and that were subject to a written warranty."

## FACTS

Defendant is a retailer of consumer goods. Compl. ¶ 9. Plaintiff is a Costco member and intends to purchase from Defendant products costing more than $15 and subject to manufacturer warranties. *Id.* ¶ 8. However, Defendant does not make product warranties available to its customers—including Plaintiff—prior to the point of sale in a manner compliant with Magnuson-Moss's Pre-Sale Availability Rule. *Id.* Plaintiff is similarly situated to other Costco members. Compl. ¶ 41. Defendant's failure is uniform across Class Members, *id.*, and is therefore unlawful as to all.

## ARGUMENT

Class certification is governed by Illinois Code of Civil Procedure Section 2-801. Under that rule, a certifying Court must find:

(1)    The class is so numerous that joinder of all members is impracticable.

(2)    There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.

(3)    The representative parties will fairly and adequately protect the interest of the class.

* 5 0 1 9 1 2 6 6 *

(4)     The class action is an appropriate method for the fair and efficient adjudication of the controversy.

735 ILCS 5/2-801. As detailed below, the proposed Class passes the test.

## A.     The Class is sufficiently numerous.

A class is "so numerous that joinder of all members is impracticable," *id.* if "such a large number of plaintiffs in a single suit would render the suit unmanageable and, in contrast, multiple separate claims would be an imposition on the litigants and the courts." *Gordon v. Boden*, 224 Ill. App. 3d 195, 200 (Ill. App. Ct. 1991).

Here, Defendant's failure to provide warranties is uniform across its locations, and the Class likely numbers in the thousands as a result. Compl. ¶ 40. Thus, the Court has "an ample basis" to find that "joinder of all members is impracticable." *Carrao v. Health Care Serv. Corp.*, 118 Ill. App. 3d 417, 427 (Ill. App. Ct. 1983); *Maxwell v. Arrow Fin. Servs.*, No. 03-cv-1995, 2004 WL 719278, at *2 (N.D. Ill. Mar. 31, 2004) ("The court is permitted to make common sense assumptions that support a finding of numerosity.").

## B.     Common issues predominate.

Common questions must "predominate over any questions affecting only individual [class] members." 735 ILCS 5/2-801(2). Common questions exist when the members are aggrieved by similar misconduct. *Miner v. Gillette Co.*, 87 Ill. 2d 7, 19 (Ill. 1981). They predominate when they "generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (cleaned up).

Here, Magnuson-Moss requires retailers to make warranties for products costing $15 or more available to customers prior to sale. 15 U.S.C. §§ 2301–2312; 16 C.F.R. §§ 700.1, *et seq.* Given that Defendant's warranty practices apply store-wide, Plaintiff's claims naturally raise common questions: Did Defendant sell products costing more than $15 and accompanied by

3

warranties? Did Defendant make the warranties available to Plaintiff and the Class members prior to sale? Did Defendant's failure to do so violate Magnuson-Moss and entitle the Class to relief? *See* Compl. ¶ 42.

Defendant's uniform conduct dictates common answers to those questions. Plaintiff and the Class members purchased products accompanied by warranties. *Id.* ¶ 37. And Plaintiff and the Class members have been injured, in that Defendant failed to make the warranties available prior to sale. *Id.* ¶¶ 27–28. Common issues therefore predominate as required.

**C.      Plaintiff is an adequate representative.**

To ensure "that all class members will receive proper, efficient, and appropriate protection of their interests in the presentation of the claim," *Purcell and Wardrope Chtd. v. Hertz Corp.*, 175 Ill. App. 3d 1069 1078 (Ill. Ct. App. 1988), a movant must show that they and their counsel "will fairly and adequately protect the interest of the class." 735 ILCS 5/2-801(3).

Here, Plaintiff has retained counsel experienced in consumer class actions. Compl. ¶ 44. Plaintiff and Plaintiff's counsel are committed to vigorously litigating this action on the Class's behalf, and have the resources to do so. *Id*. Neither Plaintiff nor Plaintiff's counsel have any interest adverse to the Class. *Id*. Plaintiff will therefore adequately represent the Class.

**D.      Class proceedings are appropriate.**

Finally, to show class proceedings appropriate for resolving the case, 735 ILCS 5/2-801(4), Plaintiff must show that a class action "(1) can best secure the economies of time, effort and expense, and promote uniformity; or (2) accomplish the other ends of equity and justice that class actions seek to obtain." *Gordon*, 224 Ill. App.3d at 203. In practice, a "holding that the first three prerequisites of section 2-801 are established makes it evident that the fourth requirement is fulfilled." *Id.* at 204.

4

Here, class litigation would serve the ends of equity and justice by deciding the dispositive issues in one fell swoop, leading to either total and final vindication for Defendant, or to practice changes if Plaintiff's claims succeed. Sealing the deal is the fact that expense and burden of pursuing individual claims would dwarf the value of the injunctive relief available. Compl. ¶ 43. Thus, the "class action is the only practical means for class members to receive redress." *Gordon*, 224 Ill. App. 3d at 204 (quotation omitted).

## CONCLUSION

As detailed above, this case is appropriate for class certification. Discovery will prove as much. Accordingly, Plaintiff moves the Court to: (1) enter and reserve ruling on this motion; (2) allow for discovery on class-certification issues; (3) grant Plaintiff leave to file an amended supporting memorandum upon completion of class discovery; (4) certify the class after full briefing; and (5) provide all other and further relief that is equitable and just.

Dated: July 20, 2022

**SAM GRANT**, individually and on behalf of all others similarly situated,

s/ J. Dominick Larry
Plaintiff's counsel

J. Dominick Larry
NICK LARRY LAW LLC
1720 W. Division St.
Chicago, IL 60622
T: 773.694.4669
F: 773.694.4691
nick@nicklarry.law
Firm ID: 64846

*Attorney for Plaintiff and the Class*